**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**JESS B.,**

     **Plaintiff,**

**vs.**                                                    **CIVIL ACTION NO. 2:23-CV-00007**

**KILOLO KIJAKAZI,
ACTING COMMISSIONER
OF SOCIAL SECURITY,**

     **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered January 6, 2023 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief in support of his claim and the Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 10, 13)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request for remand (ECF No. 10), **GRANT** the Defendant's request to affirm the decision of the Commissioner (ECF No. 13); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

1

**Procedural History**

The Plaintiff protectively filed his application for DIB on August 13, 2018 alleging his disability began on November 21, 2017[1] due to a torn meniscus in his left leg, arthritis in both legs, high blood pressure, Barrett's esophagus, asthma, irritable bowel syndrome ("IBS"), anxiety and depression. (Tr. at 15, 301-302, 320) His claim was initially denied on September 12, 2018 and upon reconsideration on December 12, 2018 (Tr. at 15, 92-102, 104-110). Thereafter, the Plaintiff filed a written request for hearing on January 17, 2019. (Tr. at 111-112)

An administrative hearing was held on June 6, 2022 before the Honorable Valerie A. Bawolek, Administrative Law Judge ("ALJ"). (Tr. at 41-62) On August 1, 2022, the ALJ entered an unfavorable decision. (Tr. at 12-40) On August 19, 2022, the Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. at 294-296, 297) The ALJ's decision became the final decision of the Commissioner on November 15, 2022 when the Appeals Council denied the Plaintiff's Request for Review. (Tr. at 1-6)

On January 5, 2023, the Plaintiff brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Defendant, (hereinafter referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings. (ECF No. 7) Subsequently, the Plaintiff filed a Brief in support of his complaint (ECF No. 10); in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 13), to which the Plaintiff filed a Reply Brief (ECF No. 14). Consequently, this matter is fully briefed and ready for resolution.

---

[1] The Plaintiff also alleged another reason why he stopped working: he was "[l]aid off" (Tr. at 321).

**Plaintiff's Background**

The Plaintiff was 41 years old as of the alleged onset date, and considered a "younger person" during the underlying proceedings. See 20 C.F.R. § 404.1563(c). (Tr. at 63) He graduated high school and has specialized training as a Journeyman Electrician. (Tr. at 321) For the last fifteen years before applying for benefits, he worked as an electrician. (Tr. at 322)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether the claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The

burden then shifts to the Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. <u>Id</u>. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c):

(c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of

4

Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in

reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that the Plaintiff met the insured status requirements through December 31, 2023. (Tr. at 17, Finding No. 1) Next, the ALJ determined the Plaintiff satisfied the first step of the sequential evaluation process because he had not engaged in substantial gainful activity since the alleged onset date of November 21, 2017. (Id., Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff had the following severe impairments: degenerative joint disease/osteoarthritis; chondromalacia, and peripheral neuralgia of the bilateral knees; left-sided meniscus tear with surgical repair; obesity; major depressive disorder; and generalized anxiety disorder. (Tr. at 17, Finding No. 3) At the third inquiry, the ALJ concluded the Plaintiff's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 18, Finding No. 4)

The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform a range of sedentary work except:

He can lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for 2 hours total in an 8-hour workday. He can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, and crouch, but he can never kneel or crawl. He can occasionally operate foot controls with either lower extremity. He can tolerate occasional exposure to extreme cold or vibration. He can perform simple repetitive tasks. He requires a job with only occasional and superficial contact with the public, and no customer service duties. He can tolerate occasional contact with coworkers. He could tolerate  more than occasional contact with supervisors for the brief training period required to learn unskilled work (i.e., no more than one month); however, he could tolerate only occasional interaction with supervisors on an on a

6

long-term basis.[2] He requires a job that is low stress, meaning a job with no strict production quotas to fa[st]-paced work requirements.

(Tr. at 21, Finding No. 5)

At step four, the ALJ found the Plaintiff is incapable of performing past relevant work. (Tr. at 30, Finding No. 6) At the fifth step, the ALJ determined that in addition to the immateriality of the transferability of job skills, the Plaintiff's age, education, work experience, and RFC indicated that there are jobs that exist in significant numbers in the national economy that he can perform, such as an inspector, sorter, or table worker. (Tr. at 30-31, Finding Nos. 7-10) Finally, the ALJ found that the Plaintiff has not been under a disability from November 21, 2017 through the date of the decision. (Tr. at 31, Finding No. 11)

## The Plaintiff's Challenges to the Commissioner's Decision

---

[2] The ALJ further noted:

that the residual functional capacity (RFC) limitation finding regarding the claimant's tolerance for interaction with supervisors differs from the hypothetical proposed to the vocational expert (VE) at the hearing. Specifically, the hypothetical proposed to the VE stated that the claimant could tolerate occasional contact with supervisors, with the VE identifying the jobs listed below (*See infra*; Hr'g Test.). On cross examination, the claimant's representative asked the VE about the impact of such a limitation during the training period. The VE stated that during the training period, more than occasional contact with supervisors would be required. (See Hr'g Test.). Such a conclusion is logical and was subsequently considered upon further assessment of the claimant's application.

As the claimant is limited to performing simple repetitive tasks, he would be limited to unskilled (i.e., SVP 1 or 2 level) work activity, such as the jobs identified by the VE (*See infra*). These jobs require, at most, up to and including one month to learn the techniques, acquire the information, and develop the facility needed for average performance in a job (*See* 20 CFR 404.1568; SSR 82-41, 00-4p; DI 25001.001A.77). While the initial RFC limitation was intended to address long-term limitations in the workplace, a review of medical evidence of record reasonably supports that the claimant would be capable of tolerating more than occasional contact for such a period based on the largely unremarkable examination findings, including cooperative and normal behavior (*See infra*).

This deviation from the hypothetical RFC proposed to the VE does not create a more restrictive residual functional capacity. Therefore, the vocational expert's testimony regarding whether jobs exist in the national economy for an individual of the claimant's age, education, work experience, and residual functional capacity, which is the dispositive factor in the outcome of this decision, is not materially affected.

(Tr. at 21-22, fn1)

The Plaintiff asserts that the mental portion of the RFC is unclear and internally inconsistent; this is especially prejudicial because the ALJ did not pose this hypothetical to the vocational expert, notwithstanding her explanation in a footnote to the RFC finding. (ECF No. 10 at 3-6) What is critical here is that the vocational expert was not asked if a hypothetical person, like the Plaintiff, could tolerate *more than occasional* contact with supervisors during the training period required to learn unskilled work. (Id. at 6-8) The Plaintiff also contends that the ALJ failed to perform an adequate "credibility" assessment because she did not consider the Plaintiff's "stellar work history"; this is another error that warrants remand. (Id. at 9-10)

In response, the Commissioner contends that the ALJ's RFC finding is consistent with the vocational expert's testimony and supported by the substantial evidence because her deviation from the hypothetical did not create a more restrictive RFC, thus the vocational expert's testimony was not materially affected (ECF No. 13 at 10-11). While the RFC finding was not part of the precise hypothetical posed to the vocational expert, the vocational expert did testify regarding additional information in response to a question from the Plaintiff's counsel concerning more than occasional interaction with a supervisor during the training period; the ALJ thoroughly explained that the training period had no material impact on the long-term capabilities endorsed by the RFC, notwithstanding the thirty-day training period. (Id. at 11-13) Further, the ALJ noted the Plaintiff's mental status examinations supported the assessment that he could tolerate more than occasional contact during the initial training period. (Id. at 13) To the extent that the Plaintiff takes issue with the ALJ's RFC assessment is unclear because it does not define what "more than occasional" contact with supervisors, Social Security Ruling (SSR) 96-9p means more than two hours of an eight-hour day, thus the ALJ's finding what the Plaintiff is capable of during the initial period is

immaterial to the disability determination. (<u>Id</u>. at 13-14) Regardless, the vocational expert did not testify that the Plaintiff would need constant or frequent contact with a supervisor during the training period, and even if the ALJ's deviation from her original hypothetical is in error, it would be harmless because she provided this Court with a thorough and clear explanation for same. (<u>Id</u>. at 14-15) Finally, the ALJ did consider the Plaintiff's work history, but this does not afford greater credence to his subjective complaints; regardless, there is no indication that further examination of the Plaintiff's work history would have affected the outcome of this decision. (<u>Id</u>. at 15-17) Based on the record, the Commissioner contends that substantial evidence supports the ALJ's decision and asks this Court to affirm. (<u>Id</u>. at 17)

In reply, the Plaintiff emphasizes that substantial evidence does not support the ALJ's determination that the Plaintiff could tolerate more than occasional interaction with supervisors during the initial thirty-day training period because she did not explain how he can tolerate this increased contact during the training period versus less contact after the training period. (ECF No. 14)

**The Relevant Evidence of Record**[3]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

**The Medical Record:**

---

[3] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. Therefore, for purposes of this Proposed Findings and Recommendation, the focus is on the Plaintiff's alleged mental impairments and their resulting limitations.

The Plaintiff attended individual therapy with Spaulding Psychology from October 2018 to August 2019 (Tr. at 1059-1069). During these sessions, while the Plaintiff displayed some difficulty expressing emotions, he also showed intact cognitive focus and flexibility, as well as active and verbal behavior, good-to-excellent motivation, constructive use of sessions, and high compliance with treatment (Tr. at 1059, 1061, 1063-1064, 1066, 1068).

From July 2019 to March 2022, the Plaintiff received individual and couples' therapy from Counseling & Wellness Center; however, these sessions focused primarily on the state of the Plaintiff's marriage rather than his individual impairments (Tr. at 1117-1122, 1180-1182, 1573-1599, 1600-1601).[4] While the Plaintiff reported increased irritability and anger during times where pain from his physical impairments was worse, he showed marked improvement with treatment (Tr. at 1039, 1063, 1180-1181, 1575-1580, 1584-1587, 1590-1596, 1601).

He displayed consistently normal results on mental status examination during appointments with his primary care and other treating physicians. Aside from only one observation of a depressed affect (Tr. at 1489), the Plaintiff otherwise showed normal mood, appropriate affect, a well-kept appearance, cooperative behavior, normal orientation, intact fluency and comprehension, normal speech, normal thought content, normal judgment, normal cognition, normal memory, normal attention span, and normal concentration (Tr. at 544, 626, 645, 687, 701, 761, 780, 808, 854, 972, 931, 987, 1012, 1112, 1260, 1339, 1397, 1421, 1473, 1497, 1570, 1774).

Regarding his medications to control his mental impairments, in March 2019, the Plaintiff reported that he was stable and doing well on Cymbalta and BuSpar (Tr. at 1008). Records from Mid-Ohio Valley Medicine in April and May 2020 describe the Plaintiff's anxiety and depression as managed with his medications (Tr. at 1407, 1413). He also denied depression on multiple

occasions throughout the record (Tr. at 1107, 1394, 1472, 1484).

Treating Psychologist Opinion:

On March 2, 2020, Cynthia Spaulding, the Plaintiff's previous psychologist, completed a check-box form opining as to his mental limitations (Tr. at 1290-1291). Ms. Spaulding wrote that the Plaintiff had no limitation in following work rules; mild limitations in relating to co-workers, using judgment, interacting with supervisors, and functioning independently; and moderate limitations in dealing with the public, dealing with work stress, and maintaining attention/concentration (Tr. at 1290). Ms. Spaulding also found that the Plaintiff had no limitations in understanding, remembering, and carrying out simple job instructions, and moderate limitations regarding detailed and complex job instructions (Id.). She opined that the Plaintiff had no limitations in maintaining his personal appearance; mild limitations in behaving in an emotionally stable manner; and moderate limitations in relating predictably in social situations and completing a normal workday and work week without interruptions from psychologically based symptoms (Tr. at 1291).

Prior Administrative Medical Findings:

On September 5, 2018, Karl G. Hursey, Ph.D., reviewed the Plaintiff's medical records and found that no medically determinable mental impairments had been established (Tr. at 68). On reconsideration, John Todd, Ph.D., re-stated Dr. Hursey's conclusions and added that the medical evidence did not support severe mental limitations (Tr. at 80).

**The Administrative Hearing:**

Plaintiff's Testimony:

The Plaintiff testified that he has problems staying on task because of his pain, and that it causes him to get "snippy" with his kids; he also has memory issues (Tr. at 53-54). He also has difficulties in public situations, finding himself frustrated with everybody and everything. (Tr. at 55)

Psychological Expert Testimony:

Gary Bennett, Ph.D., opined that the Plaintiff's major depressive disorder and generalized anxiety disorder were severe impairments but did not meet a listing (Tr. at 50, 56). Dr. Bennett found moderate limitations for all four of the "paragraph B" criteria (Tr. at 56). Based on this finding, Dr. Bennett recommended an RFC of simple repetitive tasks, no customer service work, occasional superficial contact with the public, occasional contact with coworkers and supervisors, and low-stress work, meaning no strict production quotas or fast-paced work (Id.).

Vocational Expert's Testimony:

The vocational expert (VE) categorized the Plaintiff's past work as a union electrician as medium work (Tr. at 58). The ALJ then posed a hypothetical scenario to the VE, including the following mental limitations:

> [T]his person can perform simple and repetitive tasks, this person requires a job with only occasional and superficial contact with the public and no customer service. This person can tolerate **occasional contact with supervisors** and coworkers. This person requires a job that is low stress. That is defined as no strict production quotas or fast-paced work.

(Tr. at 58-59)(**emphasis** added)  The VE responded that the hypothetical individual would be incapable of performing the Plaintiff's past work, but that jobs existed in significant numbers in the national economy that the Plaintiff could perform (Tr. at 59).

The Plaintiff's attorney asked the VE whether being limited to occasional interaction with

supervisors during the initial training period would affect the Plaintiff's ability to perform the listed jobs (Tr. at 60). The VE replied that "there would probably need to be more than occasional interaction during the training period," and that there would be no jobs if only occasional interaction was required during the training period (Tr. at 60).

## **Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

## **Analysis**

<u>The RFC Assessment and Fifth Step Finding:</u>

The RFC determination is the "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1. The RFC is a finding as to the most a claimant can still do in a work setting despite his functional limitations. See 20 C.F.R. § 404.1545(a)(1). The RFC is an administrative finding within the ALJ's exclusive jurisdiction. See Id. § 404.1546(c). The ALJ reviews "all of the relevant medical and other evidence" in the record and is charged with resolving conflicts in the evidence. Id. § 405.1545(a)(3). See also SSR 96-8p, 1996 WL 374184, at *5.

There is no dispute concerning the hypothetical posed to the VE at the administrative hearing: the Plaintiff can tolerate only occasional contact with coworkers and supervisors, and the VE responded there were jobs he could still perform, and that the VE testified that if the hypothetical individual was also limited to occasional contact during the initial training period (not to exceed thirty days), then there would be no jobs available. The issue presented here is whether the ALJ's footnoted explanation for the "deviation" in the RFC to include that the Plaintiff "*could* tolerate more than occasional contact with supervisors" during the brief training period[4] "build[s] an accurate and logical bridge from the evidence to [her] conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)(quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

Of interest here is that the ALJ did not omit this from the hypothetical to the VE, because the VE was specifically asked this question during the hearing. Importantly, however, the VE identified several jobs that the hypothetical individual could perform, notwithstanding the

---

[4] See, Tr. at 21- 22, fn1.

limitation to occasional interaction with coworkers and supervisors, yet acknowledged the individual would "probably need to be more than occasional interaction during the training period." (Tr. at 60)

The Commissioner raises a good point concerning the Plaintiff's argument supporting remand: is it really necessary just so the ALJ could ask the VE about jobs available to an individual limited to "more than occasional" contact with supervisors and coworkers to incorporate into the initial training period?[5]

A Court should affirm an ALJ's decision even if the ALJ commits error, if there is "no question that he would have reached the same result notwithstanding his initial error." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994). Indeed, other courts have acknowledged that "[e]rrors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error." Kersey v. Astrue, 614 F.Supp.2d 679, 696 (W.D. Va. 2009) See Austin v. Astrue, 2007 WL 3070601, *6 (W.D.Va. Oct.18, 2007) (citing Camp v. Massanari, 22 Fed.Appx. 311 (4th Cir. 2001)) (citing Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000)); see also Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ( "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.")(citations in original).

With respect to legal errors in an Agency determination, the Supreme Court reaffirmed that

---

[5] Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 547 (6th Cir. 2004) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game")(quoting See NLRB v. Wyman-Gordon, 394 U.S. 759, 766 n.6 (1969)).

even if an ALJ's decision contains a legal error, the plaintiff, as the moving party, bears the burden of proving that the error would have changed the ALJ's decision. In <u>Shinseki v. Sanders</u>, 556 U.S. 396 (2009), which involved an asserted legal error by the Board of Veterans Benefits, the Supreme Court noted that "lower court cases make clear that courts have correlated review of ordinary administrative proceedings to appellate review of civil cases[.]" <u>Id</u>. at 406. "Consequently," the Supreme Court explained, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." <u>Id</u>. (citing, among other cases, a Social Security appeal, <u>Nelson v. Apfel</u>, 131 F.3d 1228, 1236 (7th Cir. 1997)). If the error is not self-evident, "the party seeking reversal normally must explain why the erroneous ruling caused harm." <u>Id</u>.

The ALJ provided a reasonable explanation for allowing the Plaintiff "more than occasional contact with supervisors for the brief training period" – noting that it is logical that one would have more contact with a supervisor when starting a new job, and that the medical evidence demonstrated "largely unremarkable examination findings, including cooperative and normal behavior." (Tr. at 21-22, fn1) It is apparent that notwithstanding the "occasional contact" limitation, the VE identified several jobs the Plaintiff could still perform, knowing that there is a brief thirty-day period for training purposes, because he identified unskilled jobs. In sum, the undersigned is not left to speculate how the ALJ included the provision that the Plaintiff could tolerate "more than occasional" contract during his training period, allowing for meaningful judicial review. <u>Mascio v. Colvin</u>, 780 F.3d 632, 636 (4th Cir. 2015). Accordingly, the undersigned **FINDS** the RFC analysis is supported by substantial evidence.

<u>Work History under SSR 16-3p:</u>

The Plaintiff's other challenge to the ALJ's decision is that she failed to consider his work history in the "credibility" assessment. [6] 20 C.F.R. § 404.1529 requires a finding of the extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the consistency of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

Social Security Ruling 16-3p further directs adjudicators to use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment ("MDI") that could reasonably be expected to produce the individual's alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be evaluated to the extent which they limit the individual's ability to perform work-related activities. See, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1)

---

[6] Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p and therefore governed the ALJ's decision herein. See, SSR 16-3p, 2016 WL 1131509. The new Ruling eliminates the use of the term "credibility" from SSA policy because the Regulations do not use that term: "we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." See, 2016 WL 1119029, at *1.

The Plaintiff also alleged that the ALJ's "credibility" analysis is deficient "because of the error described above", but does not specify what error, leaving the undersigned to speculate that the Plaintiff means the RFC assessment. (ECF No. 10 at 1, 9) The Plaintiff does not identify what other evidence the ALJ failed to consider in the "credibility" analysis or explain how he was prejudiced by "the error described above"; to the extent the Plaintiff offers only this conclusory argument, he has essentially waived this challenge on appeal. Erline Co. S.A. v. Johnson, 440 F.3d 647, 653 n.7 (4th Cir. 2006) (a "[c]onclusory remark is insufficient to raise on appeal any merits-based challenge"); accord Sedghi v. PatchLink Corp., 440 Fed.Appx. 165, 167 (4th Cir. 2011) ("By advancing only a conclusory argument, Sedghi has likely waived the issue.").

,

the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Id. § 404.1529(c)(3).

It must be emphasized that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." See Manigo v. Colvin, 2015 WL 74954, at *5 (D. S.C. Jan. 6, 2015) (quoting Craig v. Apfel, 212 F.3d

433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." Clark v. Comm'r of Soc. Sec., No. 09–417, 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's opinion is sufficient if it "not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." Id.

To the extent that the Plaintiff alleges the ALJ failed to consider his work history, this allegation lacks merit – the ALJ had to consider the Plaintiff's work history to determine that he met insured status requirements through December 31, 2023 (Tr. at 17, Finding No. 1).[7] Obviously, the ALJ could not have found the Plaintiff could no longer perform his past relevant work as a union electrician (Tr. at 30) without having considered his "stellar work history." (ECF No. 10 at 9) In any event, the ALJ clearly performed the two-step process, and ultimately found the Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical and other evidence of record. (Tr. at 22-30)

Based on the foregoing, the undersigned **FINDS** that the final decision of the Commissioner is supported by substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Judge confirm and accept the foregoing findings and **RECOMMENDED** that the District Judge

---

[7] In the "List of Exhibits" attached to the written decision, the ALJ considered the Plaintiff's work history, as provided by the certified earnings records that shows steady earnings from 1994 through 2018. ("Exhibit 3D", Tr. at 303-304; "Exhibit 4D", Tr. at 305; "Exhibit 5D", Tr. at 306-312)

**DENY** the Plaintiff's request for remand (ECF No. 10), **GRANT** the Defendant's request to affirm the decision (ECF No. 13), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: August 21, 2023.

Omar J. Aboulhosn
United States Magistrate Judge